Doe, on the demise of Benjamin Burton v. Richard Roe casual ejector, and Elizabeth Wright, tenant in possession.

Upon an application to the Orphans' Court by an administrator to sell lands of the decedent for the payment of his debts, the court has power to order the sale of the same, or any part of them, subject to his widow's right of dower therein : and the purchaser thereof subject to such reservation, or condition, if not appealed from will be estopped from disputing the validity of her marriage to the decedent, and her right and title to dower in the premises; and if after the confirmation of the sale to the purchaser, dower is assigned her out of the premises so purchased by him, she will likewise be estopped from denying his title and estate in the same under the sale.

A negro or mulatto is a competent witness for a white person in a suit against a negro or mulatto, although he cannot be a witness for the latter against the former in the same suit; and it is no objection to his competency, that the rights of the parties are not mutual and equal in this respect.

Where a husband, or a wife is a party to a suit and immediately interested in the result of it, neither is a competent witness for the other, even to prove their marriage, or any other fact in the case.

7

If the validity of a marriage be disputed on the ground of the extreme youth of the wife at the time it was solemnized, and although she went through the ceremony, it was with evident reluctance on her part throughout, and that she never inde ed consented to it, and afterward would not live with her husband, it is a question of fact which the court will leave to the jury to determine and decide whether it was a marriage between them, or not.

This was an action of ejectment for fifteen acres of land in Indian River hundred. The defendant, under the consent rule prescribed by statute, confessed lease, entry, ouster and possession at the time the action was commenced, and specified upon the record that she defended the trespass and ejectment complained of, for the one third part of the said premises assigned to her by order of the Orphans' Court, as and for her dower therein, as the widow of Walter Wright, deceased, and pleaded not guilty.

The proof was that the premises in dispute consisted of about fifteen acres, with a single story dwelling house, having two rooms in it, and a small shop detached from it. Previous to the assignment of the dower of the defendant as the widow of Walter Wright, his administrator had preferred a petition to the Orphans' Court for authority to sell the premises for the payment of his debts, and obtained an order therefor, by which the court directed the same to be sold by the administrator for the purpose stated, subject to the right of dower of Elizabeth Wright, the defendant, in the premises; which were afterward duly advertised and sold by the administrator, as ordered by the court, and at the sale, the plaintiff, Benjamin Burton, became the purchaser of them. On return of the sale, the proceedings were confirmed by the court, and the administrator was ordered to make a deed therefor to the purchaser, subject to the right of dower of the defendant as aforesaid, which was done. Afterward, upon the application of the defendant to the court for that purpose, her dower was duly assigned in the premises, and in the assignment

of it, the commissioners assigned her one half of the dwelling house and a certain portion of the land attached to it; leaving the other half of the dwelling house and shop on the residue or remaining two thirds of the premises, to the immediate possession of which the plaintiff was entitled under his purchase. The plaintiff proved, however, that at the time when the action was brought, and before it, the defendant continued in possession of the whole of the dwelling house and shop, and refused to admit his right and title to either, or to pay rent for the use and occupation of them. On the trial no paper title was adduced on the part of Walter Wright to the premises, or any part of them. It was proved, however, that they formerly belonged to one Thomas Collins who sold them to one William F. Vessels, of whom Wright had acquired them under a parol contract of bargain and sale, and that he and those under whom he claimed, had been in the peaceable and undisputed possession and enjoyment of them, for more than twenty years previous to his death. During the progress of the trial, the counsel for the plaintiff endeavored to impeach and invalidate the marriage of the defendant with Walter Wright, who were both negroes, or mulattoes, and for this purpose he called to the stand Robert Clark, a negro, as a witness.

*W. Saulsbury,* for the defendant, objected to the admissibility of the witness. For notwithstanding the plaintiff was a white person, and as a general rule, it was competent for a negro to testify *for* such a party, yet as the other party who is of the same color with the witness, could not call him as a witness to testify *against* the plaintiff in this suit, the rights of the parties therefore, were not mutual and equal, a distinction which the common law abhorred and which reason and justice alike repudiated; and if the witness in a given case, could not be called to testify indifferently for both parties, could he be called to testify for or against either?

*By the Court:* It is sufficient to say in answer to the objection that the incompetency referred to, exists by the long established practice of the courts, and is recognized by statute of a very early date. Except in a certain contingency in a criminal case, no negro or mulatto is competent to testify against a white person in this State; but is competent to testify against a negro, or mulattto in all cases.

The witness was then sworn and was asked the question if he was not the husband, and had not been the husband since her first marriage, of Elizabeth Wright, the defendant.

*Saulsbury* objected to the question put, but for a different reason, and upon the ground that, if he was the husband of the defendant, he was incompetent for that reason to testify either for, or against her; even to prove his marriage with her. 2 *Ld. Raym.* 752; 2 *T. R.* 263; *Campbell v. Twemrow,* 1 *Excheq. Rep.* (1 *Price*) 39; 1 *Greenl, Ev. Secs.,* 334, 335, 337.

*E. D. Cullen,* for the plaintiff: The case cited from 2 *Ld. Raym.* 752, was an ancient case and had been since overruled. 22 *Eng. C. L. R.* 152, and was proceeding to cite other authorities to show that the cases cited and relied upon on the other side had been overruled, when the Chief Justice stopped him.

*Gilpin Ch. J.* The cases cited on behalf of the defendant from English reports, and which were cases of settlement under English poor laws and in relation to the liability of parishes for the support of paupers, have, it is true, been overruled by more recent cases, to the extent of denying that where the husband was not a party to the suit or proceeding, nor directly interested in the result of it, the wife was incompetent to prove a prior marriage to her by the husband, on the ground that it might subject the husband to a criminal prosecution for

bigamy and was against public policy, which favors and encourages domestic harmony between husband and wife. But neither the later cases, nor any other cases go to the length of holding that where the husband, or the wife is a party to the suit and is immediately interested in the result of it, either can testify for, or against the other, even to prove the marriage, or any other fact in the case. Witness rejected.

The counsel for the plaintiff then called another witness who had known the defendant for twenty-five years, and by whom it was proved that he was present at her marriage with Robert Clark about twenty years ago at her father's house. They were married by Rev. John T. Hazzard, a minister in full standing in the Methodist church, and then rode the circuit in that section of country. She was then very young, only about forteen years of age. When the marriage ceremony was about to be commenced, she did not appear to come forward very willingly, nor stand very easy during it. Her waiter conducted her up before the minister and she hung back considerably. She and Clark stood up together, however, but when the minister told them to join hands, she would not do it, and when he told them to salute each other, she would not do it. To the questions put to her by the minister in performing the ceremony, she made no answer; and the minister afterward said to him, the witness, that he did not know what to think of it, that he had never seen such a case before and that he could hardly call them married; and that he did not remember that he heard the minister pronounce them man and wife. But witness attributed her conduct at the time to her diffidence and modesty, rather than to aversion, or disinclination to marry Clark. That she did not retire with him that night, nor did they live together for some time; after a while, however, they commenced living together, but soon parted and never lived together afterward. The plaintiff's counsel here rested his case.

*Saulsbury* moved a nonsuit on the ground that no legal title to the premises had been proved in Walter Wright, under whom the plaintiff claimed title, and who must recover on the strength of his own title, and not upon any defect or deficiency in that of the defendant. That no deed from Vessels to Wright had been produced, or proved, and the latter had only been in possession of the premises for about seven years at the time of his death.

*The Court* refused the motion for a nonsuit. Both the plaintiff and defendant claimed and derived their respective titles to the premises under Walter Wright, and so far as it appeared to the court from the evidence as it then stood, they were each estopped from denying the title of the other in their respective shares of the land. Besides, it had been proved that Wright came in possession by purchase under Vessels and the latter under Collins, and that together they had had in succession the peaceable and uninterrupted possession of the premises for more than twenty years, which would confer a sufficient title on Wright, under whom both parties, the defendant, as well as the plaintiff, claimed to hold their portions of them.

The defendant's counsel then called Rev. John Rogers as a witness, and propounded the following question to him; did you, as a minister of the Baptist Church, unite in marriage, Walter Wright, since deceased, and Elizabeth Wright, the defendant in this suit?

*Cullen* objected to the question and the evidence proposed to be elicited by it, because it had already been proved that she had been married to Robert Clark who was still living and in court and from whom she had never been divorced; and therefore she never could have been married, in contemplation of law, to another since that time.

*By the Court:* That is a *fact* in the case and must therefore go to the jury for their consideration. Moreover, it is a fact in the case on which the counsel are not agreed. On the one side the validity of it as a marriage is disputed and denied, while on the other side the contrary is alleged and maintained ; and that is an additional reason why we must leave it to the jury to determine it. But as a fact in the case, without meaning to intimate any opinion as to the effect of it, the court have no doubt that it is competent for the defendant to prove her subsequent marriage to Walter Wright. But the jury must determine whether it was a lawful and valid marriage, or whether her former marriage to Clark, was a marriage or not, subject to such instructions as we may see proper to give them in regard to the matter, in case we should have any occasion to charge them on that point.

The witness then proceeded and proved the marriage of the defendant to Walter Wright, and that she passed at the time by the name of Elizabeth Clark. The counsel for the defendant also proved that she was only in possession of so much of the premises as had been assigned to her under the order of the Orphans' Court for her dower therein, and for which she was now defending and resisting this action.

*Cullen to the jury :* The second marriage of the defendant was absolutely null and void, and she never was, for that reason entitled to be endowed out of the lands of Walter Wright; and if that be so, then the plaintiff Benjamin Burton who became the purchaser of the whole premises subject to her right of dower therein took the whole, clear of all incumbrance or lien of dower, for she had no right of dower in them. Her second marriage was void because her former marriage to Robert Clark, who was still living, and from whom she had never been divorced, was a valid marriage under the facts and circumstances proved in regard to it. *Bish. on Mar. and Divorce, Secs.* 81, 82, 99, 100, 101, 103, 105, 1 *Selw, N. P.*

14 ; 2 *Greenl,* Ex. *Secs.* 461, 462, 2 *Kent's Com.* 78 ; 7 *Mass.* 48 ; 9 *Mass.* 493. But it might be contended on the other side that inasmuch as the deed of the administrator of Walter Wright to the plaintiff contained a recital that the premises were subject to the dower of the widow of the said Wright, the defendant, the plaintiff was estopped from denying her right of dower and legal title to the third part of them assigned to her for the term of her life as such. But such was not the case, because it was a sale by a trustee, the administrator for the purpose being strictly so, and a trustee had no power to impose any such condition ; and although the Orphans' Court ordered the premises to be sold subject to that condition, it did not alter the principle, for that court had no authority under the statute to order them to be sold subject to the dower, though it might order land to be sold free of dower in certain cases ; that is to say when the assignment of it by metes and bounds is waived by the demandant and she elects to take the annual interest on a third of the purchase money arising from the sale of the land, in lieu of a third of the land by assignment. *Sug. on Vend.* 70 : *Archb. Pl.* 206 ; 2 *Jac. Law Dict.* 216 ; 1 *Saund. Pl. and Ev.* 65. Besides, proceedings in the Orphans' Court, which were generally *ex parte,* were not conclusive as to the legal rights of the parties and were no evidence of title to real estate. 5 *Cow.* 168, 299, 6 *Cow.* 316. 4 *Wend.* 630 ; 8 *Wend.* 480. 4 *Binney* 231.

*Saulsbury* for the defendant : By the issue joined in the case, the only question to be determined was whether the defendant was entitled to that part of the premises which was assigned to her for her dower. Before the assignment of her dower under the order of the Orphans' Court, the administrator of her deceased husband, Walter Wright, had preferred his petition to that tribunal for an order to sell the whole of the premises for the payment of his debts, which was granted, and the same

were directed to be sold by him and were sold by him subject to the right of dower of the defendant, his widow therein, and the deed which was made by him to the plaintiff as the purchaser at the sale, under the order of the court after the confirmation of it, contained pursuant to that order, the recital of that fact. Now the statute which relates to the sale of lands of deceased persons by their executors, or administrators, for the payment of their debts, provides that any person aggrieved by an order of the Orphans' Court made in any proceeding under that statute, may appeal therefrom to the Superior Court; and that no such order shall be called in question, except upon appeal. *Rev. Code* 314 *Sec.* 16. But the plaintiff having submitted to, and cheerfully acquiesced in that order with regard to the sale of the premises to him, without appeal, he was concluded and estopped from now discussing or calling it in question here. Besides, no legal title to the premises had been shown in Walter Wright, and if he had no legal title, then the plaintiff could have taken none in the premises, or any part of them under the sale to him; and although it may be suggested in reply that this was a sword that cut both ways and invalidates the title of the defendant, as well as of the plaintiff, it was sufficient to say that the latter must recover on the strength of his own title or he cannot recover at all, however imperfect, or deficient might be that of the defendant. The plaintiff was also estopped by the recital in his deed from the administrators of Walter Wright from denying the title of the defendant as tenant in dower of the part of the premises assigned to her as such and now defended for. *Coulter v. Holland*, 2 *Harr*. 331. As to her alleged marriage previously contracted with Robert Clark, the evidence proved that it was in her extreme youth, by the solicitation of others, her father in particular, and was against her will and consent, and that even the minister who was duped into the solemnization of such a farce, would not pretend to to pronounce it a marriage at all; and as such, he was

8

right, because it was not a lawful and binding contract of marriage, for the actual consent of the parties is the first essential requisite to every legal and valid marriage, which it was evident from the proof, was signally wanting in this pretended marriage with Clark on her part.

*Cullen* in reply : The defendant in the case was not at liberty to contest, or dispute as her counsel had attempted to do, the title of the plaintiff to the two thirds of the premises sold and conveyed to him under the order of the Orphans' Court ; because having entered into the consent rule and stated that she defended for the one third part only assigned to her in dower, and pleaded not guilty of the trespass and ejectment complained of as to that, she was estopped by the pleadings and issue upon the record from denying the title of the plaintiff to the other two thirds, or the residue of the premises. In regard to the statutory provision referred to on the other side, *Rev. Code* 314, *Sec.* 16, what was the principle of law in relation to the force and effect of judgments, decrees and sentences of courts of competent jurisdiction? It was that they are final and conclusive as between parties and privies and no others. But the plaintiff in this case was neither a party, nor a privy to the proceeding in the Orphans' Court for the sale of the land; for his becoming the purchaser of it, did not make him such, and therefore he was not estopped by it to deny either the right of the defendant to dower in the premises, or the authority of the court to order them to be sold subject to such right.

*The Court, Gilpin, Ch. J., charged the jury :* According to the view which the court takes of this case, it has no occasion to consider the question presented in the argument, whether the marriage of Elizabeth Wright the defendant, first to Robert Clark and afterwards to Walter Wright, was, or was not, a valid marriage in either instance. Because as the plaintiff and defendant in the

action both claim under Walter Wright and derive their legal title to their respective portions and estates in the premises referred to from him, the plaintiff as the purchaser of the premises at the administrator's sale un. der the order of the Orphans' Court for the payment of his debts, subject to the defendant's right of dower, as his widow, therein, and the defendant as his widow, who afterward applied to the court and had her dower, as his widow, allotted and assigned to her by metes and bounds in the premises so sold, purchased by the plaintiff and conveyed to him under the order of the court, we consider that they are each concluded and estopped by the proceedings in the Orphans' Court, from controverting in this action between them, the right, title, and estate of the other in the lands and tenements in question, or from setting up any claim to any share, or estate therein, except such as they respectively took and derived under these proceedings; especially as neither party has shown, or attempted to adduce any other right, or title to the premises, or any part of them. We have already expressed on the motion for a nonsuit, our opinion of the title of Walter Wright at the time of his decease in the premises under the facts proved; but even if it were defective, or altogether insufficient, it would not be competent for either party in this suit to impeach, or deny it, for the reasons just stated. The counsel for the plaintiff, however, has contended that the administrator of Walter Wright was but a trustee under the order of the Orphans' Court for the sale of the land for the payment of his debts, and as such, he had no power to sell and the court had no authority to direct the sale of the premises subject to the right of the defendant, as his widow to dower therein. But under the statute the court would have had no power to order the sale of the land free and discharged of her right, or claim of dower, or without such a reservation or condition, unless she had, previous to the order of sale, appeared in Court and elected to take the interest on the one-third of the purchase money for the

term of her life, in lieu of her dower, and expressly
waived the assignment of it by metes and bounds. We
have therefore no hesitation in saying that the court had
ample power and discretion under the statute made and
provided for in such cases, to order the sale of these prem-
ises, or any part of them, for the payment of the debts
of the deceased, Walter Wright, by his administrator,
subject to the right of dower of the defendant as his
widow in the same ; and the plaintiff having become the
purchaser thereof with full knowledge of this reservation
and condition, and having afterward on the confirmation
of the sale by the Court, taken a deed by the order of
the Court, containing the statement, or recital that he
had bought the same, and that the same was conveyed to
him subject to such right and reservation, these orders
and decrees of the Court in the premises are final and
conclusive in regard to the matter and as to all questions
necessarily involved in, or incident to them; such as the
question whether she was legally married to the deceas-
ed Walter Wright, and was lawfully entitled as his wid-
ow to dower in the premises, unless appealed from by
him, and which not having been done, they cannot now
be drawn in question by him here, or elsewhere. *Rev.
Code*, 314, *Sec.* 16. By force of another provision in the
same statute, he took under the sale all the estate, title,
and claim which the deceased, Walter Wright had in the
premises at the time of his death either in law, or in
equity, and no more, and you know that was subject to
his wife's right of dower, the instant he died, provided
he left a widow to survive him, which the plaintiff is not
permitted now to dispute ; for he is precluded and es-
topped by these proceedings in the Orphans' Court, as
we have before stated, from denying in this action be-
tween them, that the defendant is his widow, and as such,
was lawfully entitled to be endowed out of the premises
so purchased by him. But this principle of estoppel
does not apply in this case alone to the plaintiff, for the
counsel for the defendant on her part has also sought to

invalidate; in the course of his argument, the title and estate of the plaintiff in the premises acquired under the sale of the administrator as ordered by the Orphans' Court, by impugning the right of Walter Wright himself to them in his life time and attempting to show that at the time of his death he had no legal and valid title to them; and this too, notwithstanding by his own pleadings on the record, he has specially restricted his defence to that portion of the premises, which was afterwards assigned to her by, and under the order of the Orphans' Court upon her own application, as and for her dower therein, as the widow of the said Walter Wright. But having, subsequent to the purchase of the premises by the plaintiff, made her application to the Court for the assignment of her dower as the widow of Walter Wright, by metes and bounds out of his lands and tenements so bought and then held and owned by the plaintiff and had her one third part assigned to her out of them, and having in this action waived and renounced all claim to any other portion of the premises, and by the pleadings and issues joined upon the record, specially restricted and limited her defence to the part so assigned to her, she is likewise precluded and estopped in this suit under these circumstances and the proceedings in the Orphans' Court, from impeaching the title and estate of Walter Wright in the premises, and of the plaintiff acquired under the sale to him by his administrator, or from setting up any claim or title on her own part to any portion of the premises whatever, other than that which was so assigned to her under the order of that Court, to hold for the term of her life, as and for her dower therein. And as the plaintiff has no right to the possession of this part of the premises, and is not entitled to recover it in this action, and as the proof on all the points upon which the case legally depends, is record evidence about which there can be no dispute, or controversy, if they were satisfied such were the facts of the case, then the verdict under the issue joined should be not guilty.